**STATE of Iowa, Appellee,**

v.

**Carlos THOMPSON, Appellant.**

**No. 97–1913.**

Supreme Court of Iowa.

June 3, 1999.

Linda Del Gallo, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Michael Clark and Mona Clarkson, Assistant County Attorneys, for appellee.

BEFORE: McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

Defendant Carlos Thompson challenges his conviction of three counts of delivery of a controlled substance in violation of Iowa Code section 124.401(1)(c)(3) (1997). He contends his Sixth Amendment right to counsel was violated by his trial counsel's failure to withdraw due to an alleged conflict of interest. He also argues the district court erred in failing to grant his request to remove his trial counsel. We affirm the convictions.

I. Background Facts and Proceedings

Immediately prior to the start of trial, Thompson requested that his court-appointed counsel, Ronald Ellerhoff, be removed as his counsel and a different attorney be appointed to represent him. After conducting an inquiry into the surrounding circumstances and Ellerhoff's preparation for trial, the court denied Thompson's request and the trial proceeded.

Following the presentation of evidence at trial, in which Thompson testified, the attorneys and Thompson met outside the presence of the jury to discuss jury instructions. The prosecutor requested that the jury be instructed on aiding and abetting based on Thompson's testimony. The court agreed that Thompson's testimony "could lead ... the finder of fact to conclude that he may have been aiding or assisting another in making a delivery." Thompson realized that he had implicated himself through his testimony at trial and became quite upset. The following exchange took place:

DEFENDANT: Your Honor, could I make a request?

COURT: No, through your attorney you can.

The record shows that Thompson then struck Ellerhoff in the face, causing an injury which required medical attention. The proceedings were recessed for nearly two hours while Ellerhoff received treatment. Upon Ellerhoff's return, the parties again met outside the presence of the jury and the following record was made:

THE COURT: Mr. Ellerhoff, are you prepared to make a final argument on behalf of Mr. Thompson today?

MR. ELLERHOFF: I am, your Honor.

THE COURT: Mr. Thompson, there was a problem in the disruption that you made this morning. Are you prepared to behave and participate in these proceedings at this time?

THE DEFENDANT: Yes.

THE COURT: No more disruptions?

THE DEFENDANT: (Moved head negatively.)

THE COURT: Promise me? Because if you don't, you'll be removed and the trial will continue without you. All right.

THE DEFENDANT: (No response.)

THE COURT: Are you going to or not?

THE DEFENDANT: Yes.

At no time following the altercation did Thompson request that he be granted a different attorney. The parties proceeded with closing arguments. The jury returned guilty verdicts on all three counts.

On appeal, Thompson contends he received ineffective assistance of counsel because, following the assault, Ellerhoff had a potential cause of action against him which presented a conflict of interest. Thompson also maintains the district court should have granted his request at the beginning of trial to remove Ellerhoff as his attorney.

II. Issues on Appeal

Both of Thompson's arguments on appeal involve the right to counsel guaranteed by the Sixth Amendment to the Constitution. We have previously summarized this right as follows:

The Sixth Amendment to the Federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const.

amend. VI. The Fourteenth Amendment to the Federal Constitution makes this provision binding on the states. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975).

The purpose of this Sixth Amendment provision is to ensure that criminal defendants receive a fair trial. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1696–97, 100 L.Ed.2d 140, 148 (1988). In reviewing Sixth Amendment claims, the focus is therefore "on the adversarial process, not on the accused's relationship with his lawyer as such." *Id.*

*State v. Vanover,* 559 N.W.2d 618, 626 (Iowa 1997).

A. Failure to Grant Thompson's Request for Removal of Ellerhoff and Appointment of New Counsel

■ Thompson maintains the district court erred in failing to grant his request at the beginning of trial to remove Ellerhoff as his attorney and provide him with a different attorney. Our review of a district court's decision regarding the disqualification of an attorney and his or her removal is for an abuse of discretion. *Id.* at 627. We find an abuse of discretion only when the party claiming such shows that the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* To the extent this issue implicates constitutional protections, we review the issue de novo. *Id.*

■ We find the district court did not abuse its discretion in refusing to grant Thompson's request for disqualification of Ellerhoff prior to the start of trial. Thompson's request came only moments before trial began, the court made a thorough inquiry into the adequacy of Ellerhoff's preparation, and questioned Ellerhoff as to whether any conflicts existed at that time. No abuse of discretion is apparent. We affirm the district court's denial of Thompson's request for disqualifica-

tion of Ellerhoff and the appointment of new counsel.

B. Ineffective Assistance of Counsel

Thompson also argues he received ineffective assistance of counsel because of Ellerhoff's failure to withdraw as counsel following the assault. We review ineffective-assistance-of-counsel claims de novo.

1. Applicable Law

■ The general standard used for reviewing ineffective-assistance-of-counsel claims is set forth in *Strickland v. Washington,* 466 U.S. 668, 691–96, 104 S.Ct. 2052, 2066–69, 80 L.Ed.2d 674, 695–99 (1984). That standard requires a defendant to show that his counsel's performance fell below minimum professional standards and that his counsel's poor performance was so prejudicial that it probably changed the outcome of his trial. *Id.* "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691–92, 104 S.Ct. at 2067, 80 L.Ed.2d at 695–97.

The Supreme Court recognized in *Strickland,* however, that a different standard applies for those cases in which an alleged conflict of interest provides the predicate for the ineffective assistance claim. *Id.* The Court noted that in some cases, particularly those involving the actual or constructive denial of the assistance of counsel or state interference with counsel's assistance, prejudice "is so likely that case-by-case inquiry . . . is not worth the cost." *Id.* The Court also cited an earlier ineffective-assistance-of-counsel case in which it had applied a "similar, though more limited, presumption of prejudice." *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

■ In *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333, 346–48 (1980), the Court held that prejudice is presumed when counsel is

burdened by an actual conflict of interest, which involves a breach of the duty of loyalty, one of counsel's most basic duties. *See also Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981) (Sixth Amendment right to counsel includes a corresponding right to representation unimpaired by conflicts of interest or divided loyalties). The Court in *Strickland* noted as follows with regard to the standard established in *Cuyler*:

> Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, ... it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims [of actual or constructive denial of counsel or state interference]. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97 (citing *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347–48).

The facts in *Cuyler* involved two privately retained lawyers who represented three criminal defendants charged with first-degree murder. The defendants were tried separately. The first defendant to be tried was convicted on the basis of circumstantial evidence after his defense rested without presenting any evidence. The two co-defendants were subsequently acquitted. The first defendant sought collateral relief, alleging he had been denied the effective assistance of counsel because his attorneys represented conflicting interests. *Cuyler*, 446 U.S. at 337–40, 100 S.Ct. at 1712–13, 64 L.Ed.2d at 339–41.

The Supreme Court set forth two issues to resolve in *Cuyler*: (1) "whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection"; and (2) "whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel." *Id.* at 345, 100 S.Ct. at 1716, 64 L.Ed.2d at 344–45. With regard to the first issue, the Court concluded that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346. After considering the facts set forth in *Cuyler*, the Court concluded as follows:

> Nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest. The provision of separate trials ... significantly reduced the potential for a divergence in their interests. No participant in [the defendant's] trial ever objected to the multiple representation.

*Id.* at 347, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. The Court also noted that the defense presented by counsel did not indicate the presence of a conflict and that the decision not to present defense witnesses was a "reasonable tactical response." *Id.* at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. Therefore, the Court concluded the trial court had "no affirmative duty to inquire into the propriety of multiple representation." *Id.*

Moving on to the second issue presented, the Court found that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346–37. In order to establish this element of the ineffective-assistance-of-counsel claim the defendant must show that "his counsel actively represented conflicting interests." *Id.* The Court held that upon a proper showing of those elements, a demonstra-

tion of prejudice was not necessary to obtain relief. *Id.*

### 2. The Merits

We apply the standard set forth in *Cuyler* and clarified in *Strickland* to the facts before us.[1] The *Cuyler* standard requires a trial court to initiate an inquiry if it knows or reasonably should know that a particular conflict exists. *Id.* at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346. Although the court did not conduct a lengthy inquiry prior to the resumption of proceedings following Thompson's assault of Ellerhoff, it did ask Ellerhoff whether he was "prepared to make a final argument on behalf of" Thompson. This inquiry gave Ellerhoff the opportunity to inform the court of any misgivings he had about continuing his representation of Thompson. Moreover, the defendant was present at this proceeding and had ample opportunity to raise any concerns he had about a possible conflict of interest. We recognize that the inquiry made by the

court was not as extensive as what might occur in a multiple representation case or in another case involving a conflict between the attorney's self-interest and the duty of loyalty to the client, but the facts precipitating the conflict alleged by Thompson did not warrant further inquiry. The court witnessed the assault. Unlike a case involving multiple representation or a similar, complicated conflict which arises outside the courtroom, no further inquiry could be made to flesh out the circumstances giving rise to the alleged conflict in this case. Therefore, we hold the district court made an adequate inquiry into the alleged conflict sufficient to satisfy the principle enunciated in *Cuyler*.

Next, we must determine whether Thompson has established the constitutional predicate for his claim of ineffective assistance. Thompson is required to show that an actual conflict of interest adversely affected the adequacy of his representation. This entails a showing that his counsel actively represented con-

1. The State urges us to adopt the view of the Fifth Circuit Court of Appeals that the *Cuyler* standard should be used only in cases in which the conflict claim is based on multiple representation of different clients, the situation present in *Cuyler*. In *Beets v. Scott*, 65 F.3d 1258 (5th Cir.1995), *cert. denied*, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996), the Fifth Circuit concluded that the presumed prejudice approach set forth in *Cuyler* was inappropriate for conflict claims involving issues other than multiple representation. In *Beets*, the defendant's attorney obtained a contract for media rights to the defendant's story. Following her conviction, the defendant sought habeas corpus relief on the ground that her attorney provided ineffective assistance of counsel. The *Beets* court found that conflicts between a lawyer's self-interest and his duty of loyalty to the client were best analyzed under the more lenient *Strickland* standard. *Beets*, 65 F.3d at 1272. This decision was based on several considerations: "[c]onflicts between a lawyer's self-interest and his duty of loyalty fall along a wide spectrum of ethical sensitivity"; no other category of conflicts presents such a strong risk of prejudice as multiple representation to justify an automatic presumption; and *Strickland* best addresses attorney self-interest conflicts because "the scope of the duty of loyalty with respect to attorney self-interest is inher-

ently vague and overlaps with professional effectiveness." *Id.* at 1269–71.

We note, however, that no other circuit has followed the approach adopted in *Beets*. The dissenting opinion in *Beets* states as follows:

The Supreme Court has not specifically addressed whether *Cuyler* applies to cases involving conflicts stemming from sources other than multiple representation. Nevertheless, as the majority concedes, this court, as well as every circuit court facing the issue, has applied the rule of *Cuyler* to many types of conflicts of interest.

*Id.* at 1295 (King, J., dissenting) (citation omitted).

We are reluctant to adopt the Fifth Circuit's analysis in Beets without further guidance from the Supreme Court as to the scope of Sixth Amendment protection in this area. Moreover, we note that our court has previously used the *Cuyler* standard in addressing conflicts between the attorney's self-interest and his duty of loyalty. *See State v. Atley*, 564 N.W.2d 817, 828 (Iowa 1997) (applying *Cuyler* standard to defendant's claim that defense counsel should have been disqualified based on impending new position as prosecutor), *rev'd on habeas corpus review, Atley v. Ault*, 21 F.Supp.2d 949 (S.D.Iowa 1998).

flicting interests. *Id.* at 349–50, 100 S.Ct. at 1718, 64 L.Ed.2d at 347. To establish an actual conflict "[i]t must be demonstrated that 'the attorney "made a choice between alternative courses of action. . . . If he did not make such a choice, the conflict remained hypothetical." ' " *Stevenson v. Newsome,* 774 F.2d 1558, 1561–62 (11th Cir.1985) (citations omitted). Moreover, a hypothetical conflict is not sufficient to satisfy the *Cuyler* standard. As noted in *Cuyler,* "the possibility, of conflict is insufficient to impugn a criminal conviction." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348.

We find no evidence here that the conflict alleged by Thompson progressed beyond a potential conflict of interest. Ellerhoff did not have to make a choice between alternative courses of action. He was not struggling "to serve two masters" in completing his representation of Thompson, a fitting test for determining whether a conflict exists. *See Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942). The success or failure of his representation of Thompson had no bearing on any potential claim Ellerhoff had against Thompson for assault. Ellerhoff could seek the filing of criminal charges or pursue a civil case against Thompson regardless of whether the jury convicted or acquitted Thompson. It was still in Ellerhoff's best interest to obtain an acquittal for his client. We will not assume that counsel intentionally gave a poor performance in his closing argument in hopes of obtaining revenge against his client for the assault. In fact, the transcript shows the opposite. Ellerhoff's closing argument was presented at length, analyzing evidentiary questions in detail.

Thompson is also required to establish that the alleged conflict adversely affected his counsel's performance. We find no evidence of such an adverse effect. In addition, we note that this alleged conflict arose at a time when Ellerhoff's possible enmity toward his client arising from the assault provided little opportunity for Ellerhoff to adversely affect the course of the trial. All of the evidence had been presented by the State and defense. Cross-examination had been completed by both sides. The only unfinished part of the trial was the presentation of closing arguments. The jury was required to base its decision to convict or acquit on the evidence presented, all of which was completed prior to the conflict arising.

We conclude Thompson has failed to establish that he received ineffective assistance of counsel at his trial. He did not show that Ellerhoff actively represented conflicting interests following the assault; nor did he prove that an actual conflict of interest adversely affected Ellerhoff s performance. We therefore deny Thompson's claim for ineffective assistance of counsel and affirm his convictions and sentences.

**AFFIRMED.**