S00A0993. DAVIS v. TURPIN.
(539 SE2d 129)

HUNSTEIN, Justice.

Troy Anthony Davis was tried, convicted and sentenced to death in August 1991 for the killing of a law enforcement officer and other crimes. He appealed in 1992; this Court affirmed his conviction and sentence in *Davis v. State*, 263 Ga. 5 (426 SE2d 844) (1993). Davis filed a petition for a writ of habeas corpus in the Superior Court of Butts County in March 1994. The habeas court conducted an evidentiary hearing in December 1996 and denied Davis's amended petition in an order filed on September 9, 1997. This Court granted Davis's application for a certificate of probable cause to appeal on February

24, 2000, and ordered the parties to address four issues. We affirm.

1. Davis argued in his habeas petition that execution by electrocution is cruel and unusual punishment. Although he raised other arguments on direct appeal in support of his contention that Georgia's death penalty laws constitute cruel and unusual punishment, the argument that the use of electrocution renders those laws unconstitutional was raised for the first time in his habeas petition. We agree with the habeas court that this issue was procedurally barred by not being raised and litigated at the first available opportunity. *Black v. Hardin*, 255 Ga. 239 (336 SE2d 754) (1985). The procedural bar to claims that are raised for the first time in a habeas proceeding . exists to prevent litigants from reserving meritorious issues on direct appeal in an effort to interpose needless delay to the complete resolution of their cases. Id., 255 Ga. at 239-240 (3), (4). Accordingly, Georgia law directs habeas courts to "consider whether [a petitioner has] . . . complied with Georgia procedural rules at trial and on appeal" and further provides that "absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted." OCGA § 9-14-48 (d), see *Turpin v. Mobley*, 269 Ga. 635, 637 (2) (502 SE2d 458) (1998). We agree with the habeas court that Davis has not made the required showing of cause necessary to overcome the procedural bar to defaulted claims.

2. This Court reviewed Davis's death sentence on direct appeal and found that it was "neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant." *Davis*, supra, 263 Ga. at 10 (18). We decline Davis's invitation to re-examine the proportionality of his sentence. Contrary to Davis's argument, the method by which this Court conducts its proportionality review satisfies Georgia statutory requirements and is not unconstitutional. *Gissendaner v. State*, 272 Ga. 704 (16) (532 SE2d 677) (2000).

Davis also contends that this Court should reevaluate his death sentence in light of the fact that some of the death sentences to which his sentence was compared by this Court on direct appeal have ultimately resulted in reversal and re-sentencing to life imprisonment. We have said the following about our proportionality review of death sentences:

It is the reaction of the sentencer to the evidence before it which concerns this court and which defines the limits which sentencers in past cases have tolerated, whether before or after [*Furman v. Georgia*, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972)]. When a reaction is substantially out of line with reactions of prior sentencers, then this court must set aside the death penalty as excessive.

*Ross v. State*, 233 Ga. 361, 366-367 (2) (211 SE2d 356) (1974). Because it is a jury's reaction to the evidence before it that concerns this Court in its proportionality review, it is irrelevant if the sentences in the cases used for comparison were already at the time, or later are, reversed for reasons unrelated to the juries' reactions to the evidence.

Finally, Davis contends that other defendants have received sentences less than death for crimes of similar gravity. In light of the severely aggravated nature of Davis's crime, we find no merit in his contention that the death penalty would be unlawfully disproportionate in his case, even if a new proportionality analysis were undertaken. See *Gissendaner v. State*, supra, 272 Ga. at 716 (19) (a).

3. After Davis was convicted and sentenced to death, the trial court appointed additional counsel to represent Davis during the motion for a new trial and direct appeal regarding any claims of ineffective assistance of trial counsel. Davis's original trial counsel remained responsible for all other issues during that time. Davis argues that his new counsel and his trial counsel operated under a conflict of interest and that habeas corpus relief is required, even absent a showing of actual prejudice.

(a) Whether a conflict of interest served to deny Davis his right to effective counsel during his motion for new trial and direct appeal is a mixed question of law and fact, and we review the questions of law involved de novo. *Cuyler v. Sullivan*, 446 U. S. 335, 342 (100 SC 1708, 64 LE2d 333) (1980); *Turpin v. Lipham*, 270 Ga. 208 (3) (510 SE2d 32) (1998).

A conflict of interest would warrant reversal if it rendered counsel's assistance ineffective under constitutional standards. See *Cuyler*, supra, 446 U. S. at 335 (IV); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). As with any claim of ineffective assistance of counsel, there must be a showing of constitutionally deficient performance by counsel and of resulting prejudice. However, *Cuyler* recognized that sufficient prejudice may be presumed in a post-conviction proceeding in certain limited circumstances, namely, where the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Id., 446 U. S. at 348 (IV), (B), (C). While this more lenient standard of proof has traditionally been applied to cases where one attorney represented more than one defendant, Davis argues that this standard should also apply to his case where the alleged conflict of interest arose between Davis and his counsel. See *United States v. Moree*, 220 F3d 65, 69 (2nd Cir. 2000); *Riggs v. United States*, 209 F3d 828 (II) (B) (6th Cir. 2000); but see *Beets v. Collins*, 65 F3d 1258 (II) (5th Cir. 1995).

We need not directly decide this disputed question at this time,

however, because we find that Davis's claims fail even assuming, as we do below, the applicability of the more lenient *Cuyler* standard. Generally, "the possibility of a conflict [of interest] is insufficient to impugn a criminal conviction." *Cuyler*, supra, 446 U. S. at 350 (IV) (C). While certain circumstances might so strongly suggest the likelihood of an actual conflict of interest that a trial court would be expected to conduct an inquiry sua sponte, we do not find that such circumstances existed in Davis's case. See id., 446 U. S. at 347 ("[u]nless the trial court knows or reasonably should know that a particular conflict exists, the trial court need not initiate an inquiry"); *Wood v. Georgia*, 450 U. S. 261, 272 (101 SC 1097, 67 LE2d 220) (1981) (finding that "the *possibility* of a conflict of interest was sufficiently apparent at the time . . . to impose upon the court a duty to inquire further"); *Dawan v. Lockhart*, 31 F3d 718 (II) (8th Cir. 1994); *United States v. Levy*, 25 F3d 146 (I) (A) (3) (2nd Cir. 1994); *Wilson v. Morris*, 724 F2d 591 (II), (III) (7th Cir. 1984) ("[t]he record in this case is devoid of special circumstances requiring a judicial inquiry," id. at 595 (III)). Furthermore, Davis raised no objections before the trial court suggesting his attorneys' loyalties were potentially divided, which, had they been raised, might arguably affect his present burden to show an actual conflict of interest. Compare *Wilson*, supra, 724 F2d at 593 ("[a] constitutional violation occurs, and proof of an actual conflict is not required, when a defendant's attorney objects to joint representation and the trial court overrules the objection without exploring the basis of the objection or the adequacy of the representation in the face of a potential conflict of interest"); see *Cabello v. United States*, 188 F3d 871, 875 (II) (7th Cir. 1999) ("[t]he extent to which the defendant must demonstrate prejudice depends on whether and to what extent the conflict was brought to the attention of the trial judge"). Thus, Davis bears the burden to show that an actual conflict of interest adversely affected his attorneys' performance. See *Smith v. Anderson*, 689 F2d 59, 65 (III) (6th Cir. 1982) ("[w]hen the defendant, individually or through his legal representative, fails to raise his concern for a conflict in a timely fashion, an 'actual conflict of interest adversely affect(ing) his lawyer's performance' must be established").

(b) We first address Davis's contention that the new attorney appointed to raise claims of ineffective assistance during his motion for a new trial and direct appeal operated under a conflict of interest. The habeas court found that Davis's new counsel "zealously and competently represented Davis's interests in challenging the effectiveness of the primary defense team's assistance at trial" and that there was "no support" for the allegation that Davis's new counsel failed in his professional duties as a result of the friendly acquaintance he had with Davis's trial counsel. This mixed finding of law and fact is sup-

ported by the record. In context, counsel's statement that there was no "adversarial relationship" between himself and Davis's trial counsel shows merely that the two attorneys related to one another in a congenial and professional manner, not that ineffective assistance claims were not zealously prosecuted. Counsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question. See *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991); see also *Kennebrew v. State*, 267 Ga. 400, 401-402 (2) (480 SE2d 1) (1996). In this case, the record supports the habeas court's finding that Davis's new counsel operated with appropriate independence and took adequate steps to examine trial counsel's performance by reviewing the record, by investigating matters outside the record, and by interviewing Davis both inside and outside the presence of his trial counsel.

Because nothing in the trial court or habeas court records suggests that Davis's supplemental appellate counsel had divided loyalties or allowed his actions to be in any way negatively affected by the simultaneous representation, we conclude that the habeas court did not err in finding that Davis's new counsel was not operating under an actual conflict of interest.

(c) Davis also contends that his original trial counsel began operating under a conflict of interest once new counsel was appointed to pursue ineffective assistance claims. Again, we conclude that he has failed to show that an actual conflict of interest existed.

Davis's original counsel was responsible for raising alleged trial court error during Davis's motion for new trial and direct appeal. Davis suggests that counsel's loyalties were divided between his duty to argue zealously meritorious issues on Davis's behalf and his own interest in defending himself against claims that he had rendered ineffective assistance during Davis's trial. However, nothing in the record suggests that Davis's original counsel withheld his best efforts or was distracted because his professional reputation was subjected to scrutiny. The record shows that Davis's original counsel encouraged Davis to speak freely and confidentially with his new counsel about any concerns Davis might have had concerning his representation at trial and even suggested several possible areas for examination to Davis's new counsel. Accordingly, we accept the habeas court's factual finding that Davis's original counsel continued to serve Davis's interests and took active steps to facilitate the efforts of Davis's new counsel to do the same. See *Carter v. Armontrout*, 929 F2d 1294, 1300 (8th Cir. 1991) (applying *Cuyler* and accepting state court's credibility and factual finding that attorney who was being sued by her client during criminal proceeding had not compromised her loyalty to her client); *Iowa v. Thompson*, 597 NW2d 779 (II) (B) (2) (Iowa 1999) (finding no evidence that attorney's potential criminal

charges against his client for assaulting him in court had created an actual conflict of interest).

As found by a Federal court of appeals in another case of alleged conflict of interest, we find that "any conflict that might have stemmed from [counsel's] interest in protecting his professional standing evaporated" when he took active, professionally-responsible steps to facilitate the litigation of Davis's claims of ineffective assistance. *Fields v. Attorney General of State of Md.*, 956 F2d 1290, 1298-1299 (III) (4th Cir. 1992). Accordingly, we conclude that the habeas court did not err in finding that Davis's original counsel did not operate under an actual conflict of interest during Davis's motion for new trial and direct appeal.

4. Davis claimed in the habeas court that his constitutional rights were denied by his alleged absence during critical stages of his trial proceedings. Davis also claimed that his appellate counsel rendered ineffective assistance in failing to raise the issue of his alleged absence on direct appeal. We hold that the habeas court correctly determined that this claim was procedurally defaulted because it was not raised on direct appeal and find that the procedural bar erected by the failure to raise this claim on direct appeal has not here been overcome by a showing of sufficient cause and prejudice. *Turpin v. Todd*, 268 Ga. 820 (2) (a) (493 SE2d 900) (1997).

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

BENHAM, Chief Justice, dissenting.

I respectfully disagree with the majority's decision to affirm the habeas court's ruling that Davis is procedurally barred from pursuing his habeas claim that electrocution is cruel and unusual punishment under the Georgia and United States constitutions. For the reasons that follow, I would vacate that portion of the habeas court's order denying Davis's petition for a writ of habeas corpus insofar as the order concluded that Davis was procedurally barred from pursuing his claim that execution by electrocution is cruel and unusual punishment, and remand the case for further proceedings.

It is in Davis's habeas petition that he raised for the first time the argument that the use of electrocution as the means of execution is cruel and unusual punishment. As the majority notes, the habeas court did not address the merits of Davis's contention because the court concluded that the failure to raise the "evolving standards of decency" argument at trial constituted a waiver under *Black v. Hardin*, 255 Ga. 239 (336 SE2d 754) (1985). I disagree with the imposition of the procedural bar without reference to whether Davis had or could have made a showing that the factual or legal basis of the claim was not available to Davis's counsel on direct appeal. See *Turpin v.*

*Todd,* 268 Ga. 820, 825 (493 SE2d 900) (1997).

The procedural bar to claims that are raised for the first time in a habeas proceeding exists to prevent litigants from reserving meritorious issues on direct appeal in an effort to interpose needless delay to the complete resolution of their cases. See *Black v. Hardin,* 255 Ga. at 239-240 (3) and (4) (holding that an available claim that is not raised on direct appeal is "waived" and that "there then exists a procedural bar to its consideration in habeas corpus proceedings"). Accordingly, Georgia law directs habeas courts to "consider whether [a petitioner has] . . . complied with Georgia procedural rules at trial and on appeal" and further provides that "absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted." OCGA § 9-14-48 (d); see *Turpin v. Mobley,* 269 Ga. 635, 637 (2) (502 SE2d 458) (1998).

The required showing of cause necessary to overcome the procedural bar to defaulted claims is not easily made. This Court has recognized ineffective assistance of appellate counsel as one of the few causes that can, in certain circumstances, satisfy the requirement. *Turpin v. Todd,* supra, 268 Ga. 820 (2) (a) ("The procedural bar, however, may be overcome if the petitioner shows, first, an adequate cause for failing to raise the issue earlier and, second, actual prejudice resulting from the alleged error or errors."). Our reasoning in *Todd* relied, in part, on persuasive holdings under federal law. Id. at 825. We also noted in *Todd* another showing of cause recognized under federal law, "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (Citations and punctuation omitted.) Id. (quoting *McClesky v. Zant,* 499 U. S. 467, 494 (111 SC 1454, 113 LE2d 517) (1991)). I would now hold explicitly that the procedural bar to a claim that was not raised on direct appeal should be set aside upon a showing that the factual or legal basis for the claim was not reasonably available to counsel and that there is actual prejudice to the petitioner's constitutional rights. Indeed, this class of exceptions to the limitation of the review of defaulted claims is nothing more than a necessary, logical extension of the "cause and prejudice test" set forth in *Black v. Hardin. Black,* 255 Ga. at 240 (4) (authorizing consideration of defaulted claims upon a "showing of adequate cause for failure to object or to pursue on appeal and a showing of actual prejudice to the accused"); see *Turpin v. Lipham,* 270 Ga. 208, 209-210 (2) (510 SE2d 32) (1998); *Cherry v. Abbott,* 258 Ga. 517, 517-518 (371 SE2d 852) (1988).

Turning to the question of whether the habeas court correctly rejected Davis's claim as procedurally barred because of Davis's failure to raise it at trial and on direct appeal, I note that at the evidentiary hearing, Davis proffered numerous affidavits in support of his contention that electrocution is cruel and unusual punishment.

These affidavits purported to show that executions by electrocution have been plagued by shocking and grotesque errors,[1] that there is a substantial risk that many if not all executions by electrocution result in the unnecessary infliction of pain and disfigurement,[2] that societal mores surrounding execution by electrocution have undergone meaningful evolution since Davis's sentence was imposed at trial, and that legislative developments across the nation evidence a national abandonment of electrocution as a means of execution.[3] Davis's post-hearing brief argued vigorously that electrocution has been steadily abandoned as an acceptable means of execution and that recent scientific inquiries into electrocution[4] have cast serious

---

[1] See Affidavit of Deborah W. Denno, December 5, 1996, ¶ 18 (outlining "botched" electrocutions, including two, one of which was in Georgia, since Davis's direct appeal).

[2] Affidavit of Clive A. Stafford Smith, December 5, 1996 (describing a 1996 electrocution in Georgia); Affidavit of Paula B. Hutchinson, December 5, 1996 (describing a 1994 electrocution in Nebraska); Affidavit of Dale A. Baich, December 4, 1996 (describing a 1996 electrocution in Nebraska); Affidavit of John Charles Boger, December 5, 1996 (describing a September 1991 (shortly after Davis's trial) electrocution in Georgia).

[3] See Affidavit of Deborah W. Denno, December 5, 1996, ¶ 12 ("Altogether, 20 states have switched from electrocution to another method of execution. Moreover, five of these states have switched in the last three years."); Affidavit of Richard C. Dieter, December 5, 1996 (outlining national legislative abandonment of electrocution, including decrease in use of electrocution from 1991 to date of affidavit); see also La. Rev. Stat. Ann. § 15:569 (abolishing electrocution as of September 15, 1991); 1990 Pa. Laws 145 (abolishing electrocution, codified as 61 Pa. Code § 2121.1 until repealed by 61 Pa. Code § 3004 which also specifies lethal injection as method of execution); Ohio Rev. Code Ann. § 2949.22 (allowing lethal injection as an alternative to electrocution as of July 1, 1996); Va. Code Ann. § 53.1-234 (allowing lethal injection as an alternative to electrocution as of January 1, 1995); Conn. Gen. Stat. § 54-100 (abolishing electrocution as of October 1, 1995); Ind. Code § 35-38-6-1 (abolishing electrocution as of July 1, 1995); N.Y. Correct. Law § 658 (abolishing electrocution for crimes committed on or after September 1, 1995); S.C. Code Ann. § 24-3-540 (allowing lethal injection as an alternative to electrocution as of June 7, 1995); Ky. Rev. Stat. Ann. § 431.220 (abolishing electrocution where sentence is imposed after March 31, 1998, and providing lethal injection as an alternative for death sentences imposed before that date); Tenn. Code Ann. § 40-23-114 (abolishing electrocution for crimes committed on or after January 1, 1999, and providing lethal injection as an alternative for crimes committed before that date); Fla. Stat. Ann. § 922.105 (adopting lethal injection except in cases where electrocution is affirmatively elected, effective January 14, 2000); OCGA § 17-10-38 (providing for execution by lethal injection for crimes committed on or after May 1, 2000); 2000 Ga. Laws 947 (preserving execution by electrocution for persons sentenced to death for crimes committed before May 1, 2000).

[4] See Affidavit of John G. Webster, Ph.D., December 4, 1996 (describing expert review of apparatus for electrocution in Louisiana and opining that a determination of the degree of pain inflicted by Georgia's apparatus would require similar expert review); Affidavit of Harold Hillman, Ph.D. (opining that electrocution is extremely painful, that a low percentage of electricity applied to the scalp penetrates the skull to reach the brain, and that death from electrocution is slow); Affidavit of Orrin Devinsky, M.D., December 5, 1996 (opining based, in part, on review of an execution in 1995 that "[e]lectrocution can be intensely painful" and that it is impossible to conclude that death is instantaneous); Affidavit of Donald D. Price, Ph.D., December 5, 1996 (outlining his ongoing research and opining that electrocution might induce extreme sensations of pain and "horror" by stimulation of certain portions of the brain).

doubt on its humaneness.

Davis contended that his proffered evidence of progressively-emerging changes in society's views toward electrocution were indicative of "evolving standards of decency" sufficient to invoke the protections against cruel and unusual punishments embodied in the Eighth and Fourteenth Amendments to the United States Constitution and in Article I, Section I, Paragraph VII of the Georgia Constitution and sufficient to overcome the procedural bar to his claim. *Trop v. Dulles*, 356 U. S. 86, 101 (78 SC 590, 2 LE2d 630) (1958); see also *Penry v. Lynaugh*, 492 U. S. 302 (109 SC 2934, 106 LE2d 256) (1989) ("While a national consensus against execution of the mentally retarded may someday emerge reflecting the 'evolving standards of decency that mark the progress of a maturing society,' there is insufficient evidence of such a consensus today."); *Stanford v. Kentucky*, 492 U. S. 361 (109 SC 2969, 106 LE2d 306) (1989); *Fleming v. Zant*, 259 Ga. 687, 689-690 (3) (386 SE2d 339) (1989) (applying evolving standards of decency to the Georgia Constitution's ban on cruel and unusual punishment). Davis's argument suggests that, at the time of his direct appeal, the factual basis for an effective claim that electrocution was cruel and unusual punishment did not exist, or at least did not exist to the extent that it does now.

A federal district court was recently confronted with a similar situation, and I find that court's resolution of this issue to be persuasive. In *McNair v. Haley*, 97 FSupp2d 1270 (M.D. Ala. 2000), a federal district court considered the application of the federal procedural default doctrine to the petitioner's claim that evolving standards of decency barred his execution by electrocution under the federal constitution. The federal magistrate court which first considered the petitioner's federal habeas corpus petition had found that evidence of changing societal mores, of legislative developments, and of recent malfunctioning of the electric chair were merely additional evidence tending to support a previously existing claim and, therefore, that the exception where "the factual or legal basis for a claim was not reasonably available to counsel" did not apply. Id. at 1276. The federal district court disagreed, stating, "T[he] evidence *does not simply support* an eighth-amendment claim that electrocution offends evolving social standards of decency; instead, *it is the very basis for the claim itself.*" (Emphasis supplied.) Id. at 1277. The court reiterated its holding by characterizing the evidence of evolving societal standards as "the necessary preconditions for the very claim itself." Id. The court then concluded as follows: "Because these new facts are the basis for a claim that was not reasonably available during the petitioner's state proceedings, this court finds cause to excuse the procedural default." Id. at 1277-1278. Although this Court applies Georgia procedural law, I believe Davis's situation to be quite similar and the

district court's resolution of the question to be persuasive. By its very nature, it is quite possible that Davis's argument that "evolving standards of decency" demonstrate that electrocution is cruel and unusual punishment could not have been raised in the same manner in 1992 when his direct appeal was heard as it could have been raised in December 1996 when his evidentiary hearing was held. The very basis of Davis's claim is that societal standards have changed.

Because the habeas court disposed of Davis's claim that "evolving standards of decency" demonstrate a viable claim of cruel and unusual punishment under the State and federal constitutions without reference to whether Davis had or could have made a showing that "the factual or legal basis for [that] claim was not reasonably available to counsel" on Davis's direct appeal, I would vacate that aspect of the habeas court's order and remand the case for further consideration. On remand, the habeas court should determine whether Davis has made a proffer of evidence unavailable to him during his direct appeal that is sufficient to warrant consideration of his claim that electrocution is cruel and unusual punishment in light of evolving standards of decency. If the habeas court should find that Davis has made a sufficient proffer, the proffered evidence should be admitted, and a resolution of the claim on its merits should be made. In the interest of judicial economy, the habeas court should also consider any supplemental proffer Davis might make purporting to show further evolution of relevant "standards of decency" since the time of his evidentiary hearing.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join this dissent.

DECIDED NOVEMBER 13, 2000 —<br>RECONSIDERATION DENIED DECEMBER 15, 2000.

*Thomas H. Dunn, Michael Mears, Priya N. Lakhi, Charlotta Norby,* for appellant.

*Joseph L. Chambers, Sr., Wesley S. Horney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Allison B. Vrolijk, Assistant Attorney General,* for appellee.

*Mark E. Olive,* amicus curiae.