Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 We think there was error in the rejection of the evidence offered by the plaintiff*. Some of it may have been immaterial to the issues pending, but the court directed that all the record and documentary evidence be embraced in one offer, and then rejected it all. In effect the objections urged by the defendants were treated as a demurrer, and the offer was overruled because the evidence was regarded as insufficient in law to sustain the action.
 

 If the rights of the plaintiff have not been lost by failure to prosecute them in the proper mode, and in due time, the joint resolution of 1843, in our opinion, protects him against the mortgage, and all persons claiming thereunder.
 
 *
 

 That the plaintiff’s testator was a contractor with the Hemphill Railroad Company, and that the debt due to him was incurred by the compauy for the construction of their railroad, it was the direct tendency of the evidence offered to prove, and these facts are uncontroverted now. That debt, therefore, was within the protection, whatever that may be, of the resolution. What, then, was the nature and extent of that protection ? It is unnecessary to assert that the company was rendered incapable of making a mortgage, or any transfer of its property, so long as the debt due to its contractor remained unpaid. But the language of* the resolution is too clear to admit of question that the legislature intended to give to an unpaid contractor a priority' of claim
 
 *438
 
 to the company’s property, over every right that could be acquired by a mortgagee, or acquired under a mortgage, if the mortgage was made after the debt to the contractor was incurred. It was at least intended that the property, into whosesoever hands it might come, should remain subject to a paramount claim of the contractor so long as the debt due to him remained unpaid. That this was substantially giving to him a lien of indefinite duration seems quite plain. It was not a
 
 “jus in re”
 
 nor a
 
 “jus ad
 
 rem,” but it was a charge upon the property, a right to prevent any disposition of it, by which it could be withdrawn from the creditor’s reach, and therefore in a very legitimate sense an equitable lien. The resolution in effect declared that while his claim agaiust the company exists, a subsequent mortgage or transfer cannot be set up to defeat the contractor’s resort to the property and his superior right to have it applied to the payment of the debt due him. It is true the mode of that resort is not prescribed. It can only be by suit, judgment, and execution, but whenever judgment and execution are obtained, the lien is made to precede the lieu of any mortgage or the effect of any conveyance; more accurately, it has the effect it would have were there no mortgage or conveyance in existence. The property may be levied upon and sold, and the proceeds of the sale may be applied to the satisfaction of the debt due the contractor, without possible interference by the mortgagee, though the mortgage preceded the judgment in time.
 
 We
 
 cannot regard the resolution as no more than a partial re-enactment of the statute of 13th Elizabeth invalidating mortgages and transfers only when there is an actual or constructive intent to hinder, delay, or defraud creditors. If that was all the resolution intended it was unnecessary and unmeaning. But it declares null and void every mortgage
 
 the effect
 
 of which is to defeat,
 
 postpone,
 
 endanger, or delay contractors, laborers, and workmen. The mortgage may be good as against other creditors, but it is a nullity as to them.
 

 It has been argued that it is against the policy of Pennsylvania to allow secret liens, or liens not of.record, or liens
 
 *439
 
 on land created by parol, and undoubtedly there are evils attendant upon the allowance of such incumbrances. But that is a matter for legislative consideration. The supposed policy of the State cannot, in a judicial tribunal, prevail over a plain statute. And notwithstanding the disinclination judges have manifested to sustain liens not of record, there are many such liens known to the statute laws of that State and upheld by the courts. A mechanic, or materialmau, is given a lieu, and he is not required to put his claim on record until within six months after his work has been done, or his materials have been furnished. Yet his lien has priority over every lien (other than a mechanic’s) which attached to the building or curtilage subsequent to the commencement of such building. So liens are given by statutes to laborers, miners, and clerks, and they are valid against feubsequent mortgages, though the liens do not appear upon any record.
 
 *
 
 It is not, then, against the policy of the State to create a statutory lien in favor of laborers or workmen.
 

 And if we have correctly interpreted the legislative resolution of 1843, if the debt due from the Hemphill Railroad Company to the plaintiff’s testator was a lien upon the property of the company from the time it was created, so far, at least, as to have priority over any subsequent mortgage or conveyance, it is plain the lien would have continued a prior incumbrance, so long as the debt it was given to secure remained, had there been no such subsequent mortgage. But the express declaration of the resolution is that the mortgage shall have no effect as against such a debt or claim. And this must meau that neither the mortgage itself nor any sale made under it shall have the effect of defeating, postponing, endangering, or delaying the contractor; for if a sale made under the mortgage discharges the contractor’s lien and removes the property from his reach, effect is given to the mortgage itself, and precisely the effect which the statute denied to it.
 

 We are thus brought to the question whether the lien or
 
 *440
 
 claim which the plaintiff’s testator had upon the property, real and personal, of the Hemphill Railroad Company, as a security for the debt due him, and which was paramount to the mortgage made to the company, has been lost or extinguished. And we think it has not. The debt remains .due and unpaid. In 1855, Fox, the contractor, commenced a suit for its recovery, and he obtained a judgment in 1860. That judgment did not extinguish the right which he had from the time the debt was incurred to have the property of his debtors first applied to the satisfaction of the debt. It did not cause to be merged in itself the original lien, any more than a judgment obtained upon a bond secured by a mortgage absorbs the lien of the mortgage! In whatever shape the debt was it had the benefit of the statutory privilege. It matters not then that more than five years elapsed after the judgment was recovered before it was revived, for if it be conceded that the lieu of the judgment expired, that of the debt remained.
 

 And if the lien of the judgment recovered in 1860 ceased at the end of 'five years from the time of its rendition, still it is undeniable that the revived judgment of 1867-gave a new lieu which followed the property into whosesoever hands it came, until the present scire facias was sued out in February, 1871. The only possible answer to this is that before the revived judgment of 1867 was obtained, the property of the Hemphill Railroad Company had passed from its ownership, had become vested in its mortgagees, and that the trustees of the mortgage were not notified of the scire facias, or made parties to it. To this there are two replica-’ tions, each of which, in .our opinion, is quite sufficient. The first is that the company was, by the resolution of 1843, deprived of the power to make a mortgage or any conveyance by which its property could be withdrawn from the reach of the plaintiff, and the mortgagees or trustees could acquire no rights which the mortgagors were unable to confer. The second replication is that the mortgage to Seal and others was not a grant of the ownership of the property described in it. It was but the creation of a lien for the security of
 
 *441
 
 the bonds issued under i,t. True, the trustees of the bondholders, pursuant to its provisions, took possession of the mortgaged property in 1857, and carried on the business of the company until 1871, but even as against them the company remained the owners of the road, subject only to a lien to secure the payment of the mortgage debt. The trustees were not terre-tenants. They were mere occupants. Terre-tenants, against whom, by the laws of Pennsylvania, it is necessary that a scire facias to revive a judgment be sued out, in order to preserve its lien, are those who have seizin of the land, those who are owners, or claim to be' owners by title derived from the defendant in the judgment. There can be no terre-tenant, such as intended by the act of 1798,
 
 *
 
 who is not a purchaser, mediately or immediately, from the debtor while the land was bound by the judgment.
 
 †
 
 Such has always been held to be the law in Pennsylvania, and such are terre-tenants in England.
 
 ‡
 
 A mortgagee has never been regarded as a terre-tenant entitled to notice of the revival of a judgment. There has therefore been no failure or neglect in this case to make the necessary parties to all the judicial proceedings commenced by the plaintiff' or his testator. The law did not require notice of the scire facias sued out to revive the judgment of 1860, to be given to the trustees of the mortgage, and if the lien of that judgment had expired, the revived judgment fastened a new lien upon the property. That lien was a security for the debt which, by the resolution of 1843, was made paramount to the mortgage, and against \yhieh, while it remains unpaid, the mortgage cannot be set up.
 

 This, however, relates to the ordinary judgment lien, but it is not essential to the plaintiff’s case, as exhibited by the evidence he offered, that the judgment which he now seeks to enforce is a lien upon the property claimed and held by the trustees of the mortgage and by the Wheeling, Pitts-
 
 *442
 
 burg, and Baltimore Bailroad Company. It would be were it not for the legislative resolution of 1848, and for the enactment of April 4th, 1862. But the first of these, as we have seen, made the debt due to the contractor, itself a lien without a judgment, and prescribed no limits to its duration. The second (the act of April 4th, 1862), manifestly recognized the existence of such a lien, and pointed out a mode for making it available to the creditor. This will be seen by reference to the act itself.
 
 *
 

 This act makes special provision for such cases as the present. Under it all that is necessary to enable a contractor, laborer, or workman to proceed by scire facias against a person or company claiming to hold or own the real or personal estate of the debtor to such contractor, laborer, or workman, by virtue of a mortgage made in contravention of the resolution of 1843, is that he has obtained a judgment against the indebted company which gave the mortgage. It is not required that his judgment shall be a lien on the property. And plainly it was not intended that such a lien must exist. The resolution of 1843 prohibited transfers, assignments, and mortgages of personalty as well as of realty, and a judgment creates no lieu upon personalty. But the resolution recognizes the right of a contractor to follow both into the hands of a claimant or owner holding under such an assignment, transfer, or mortgage, without regard to the question whether the property is real<>r personal. It, therefore, recognizes the existence of a lieu in favor of those protected by it, independent of the lien of any judgment they may recover. This must be so, for if it is essential to a right to proceed by scire facias against the property in the hands of a grantee of the indebted company that the judgment of the creditor shall be a lien upon that property, what is to be said of the case where the indebted company has conveyed before the recovery of any judgment? In such a case the judgment can be no lien. Yet it will not be claimed the property could not be followed by scire facias against
 
 *443
 
 the grantee. And if it could, it must be, not because of the lien of the judgment, but because of the lien of the debt, a lien which, as there is no statutory limitation to it, remains so long as the debt remains unsatisfied.
 

 Such being, in our opinion, the true meaning of the joint resolution of 1843, and of the act of the legislature of 1862, the evidence offered by the plaintiff’ and rejected by the court should have been received. It tended to prove,
 
 inter alia,
 
 that the plaintiff’s claim was within the protection of the joint resolution; that the mortgage under which the defendants hold was invalid as against him; that his case was embraced in the remedial act of 1862, and that the defendants had bought under a decree of foreclosure of the mortgage, which expressly directed that the property should, notwithstanding the sale, remain subject to the claim of the plaintiff.
 

 It has been contended, however, iu support of the ruling of the court below, that the sale which was made of the property in March, 1871, under a decree of the Supreme Court of Pennsylvania iu the suit to foreclose the mortgage, divested the plaintiff’s lien, and that thereafter his only remedy was a resort to the proceeds of that sale. This might be so if the only lien he had was that of his judgment. But, as we have endeavored to show, he had a lieu independent of his judgment and prior to the mortgage. The decree of the Supreme Court ordered the property to be sold subject to that. The plaintiff’ petitioned to be allowed to intervene
 
 “pro interesse suo
 
 ” in the suit for foreclosure, or, if that was not allowed, that ho might be paid out of the pi’oceeds of sale, but his petition was refused, and the court ordered that the purchaser at the sale should hold the whole of the estate and property, real, personal, and mixed, of the Hemphill Railroad Company, “subject to any lawful claims or rights which may exist prior or paramount to said mortgage.” The plaintiff’s lien, therefore, was undisturbed by the sale, and, hence, he had no right to look to the proceeds of the sale for payment.
 

 This disposes of the case.
 

 
 *444
 
 It is hardly necessary to add that the act of the legislature of April 12th, 1851, empowering the Hemphill Railroad Company to borrow money and pledge its property and income to secure the payment thereof, cannot be regarded as exempting that company from the operation of the resolution of 1848.
 

 Judgment reversed, and a
 

 Venire de novo awarded.
 

 *
 

 See the joint resolution set out,
 
 supra,
 
 p. 426. — Rep.
 

 *
 

 Act of March 30th, 1859, Pamphlet Laws, 318.
 

 *
 

 3 Smith’s Laws, 331.
 

 †
 

 Dengler
 
 v.
 
 Kiehner, 13 Pennsylvania State, 41; Chahoon
 
 v.
 
 Hollenbaek, 16 Sergeant & Bawle, 432; In re Dohner’s Assignees, 1 Pennsylvania State, 104.
 

 ‡
 

 2 Saunders, 9, Note 8.
 

 *
 

 See it set out,
 
 supra,
 
 p. 428. — Rep.