**Willie McNAIR, Petitioner,**

v.

**Michael HALEY, Commissioner, Alabama Department of Corrections, Respondent.**

**No. CIV.A.98–T–915–S.**

United States District Court,
M.D. Alabama,
Southern Division.

May 11, 2000.

Supplemental Opinion June 1, 2000.

Randall S. Susskind, Cathleen I. Price, Equal Justice Initiative of Alabama, Montgomery, AL, for Willie McNair, plaintiffs.

Beth Jackson Hughes, J. Clayton Crenshaw, Michelle R. Stephens, Office of the Attorney General, Alabama State House, Montgomery, AL, for Michael Haley, Bill Pryor, defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Currently before the court in this death penalty habeas case brought by petitioner Willie McNair against respondent Michael Haley are these two tasks: (1) identifying which of the petitioner's 42 claims should be dismissed as procedurally defaulted, and (2) identifying in turn the non-defaulted claims for which this court should permit an evidentiary hearing. These tasks were referred to United States Magistrate Judge Susan Russ Walker for recommendation, which was filed on June 2, 1999. Both petitioner and respondent have filed objections to portions of the recommendation. For the reasons discussed below, the court adopts the part of the recommendation for which no objections have been filed, overrules the respondent's objections, and sustains in part and overrules in part the petitioner's objections.

## I. PROCEDURAL BACKGROUND

The complicated procedural history of this case is concisely summarized in *McNair v. State*, 706 So.2d 828, 831–33 (Ala.Crim.App.1997). Petitioner Willie McNair was convicted on April 18, 1991, for the capital offense of murder committed during the commission or attempt of a robbery in the first degree. Irregularities in these proceedings included jury deliberations in which a minister read Biblical passages aloud and led the jurors in prayer. McNair was sentenced on May 16, 1991, when the trial judge adopted the divided jury's majority recommendation that McNair be sentenced to death.

The sentence was thrice remanded to the trial court for a proper sentencing order. On February 26, 1993, after the first remand, McNair was again sentenced to death after the trial court rejected the new sentencing jury's recommendation of life without possibility of parole. Two remands later, the state trial court finally entered an acceptable sentencing order. The appeals court affirmed the conviction and sentence on January 21, 1994, *see McNair v. State*, 653 So.2d 351 (Ala.Crim. App.1994), and the Alabama Supreme Court likewise affirmed on September 2, 1994, *see Ex parte McNair*, 653 So.2d 353 (Ala.1994). The United States Supreme Court denied a certiorari petition on February 21, 1995. *See McNair v. Alabama*, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995).

McNair filed a petition for post-conviction review under Ala. R.Crim. P. 32 on July 5, 1995. The state trial court dismissed the claims as procedurally barred, with the exception of those relating to the following: ineffective assistance of counsel; withheld exculpatory evidence; and racially-biased imposition of the death penalty. Those claims in turn were denied on November 13, 1995, and the state appellate court affirmed denial on July 3, 1997. *See McNair v. State*, 706 So.2d 828 (Ala.Crim. App.1997).

McNair filed the present 28 U.S.C.A. § 2254 petition for writ of habeas corpus on August 18, 1998. This court has determined that the case should proceed in two stages: in Stage I, the court will determine which claims are procedurally defaulted and which non-defaulted claims merit evidentiary hearings; later, in Stage II, this court will reach the merits of the non-defaulted claims. *See* order entered December 23, 1998 (Doc. no. 19).[1] Stage I

---

1. At the conference held February 16, 2000, both petitioner and respondent confused the issue of "evidentiary hearing" with the nature of Stage II. Stage II is the phase of this case at which the court will rule on the merits of all non-defaulted claims, whether or not the court will permit the parties to develop evidentiary basis of any of those claims. The

court may very well conduct a full "hearing," with arguments and other trappings of a hearing, on all claims even though it will conduct an *evidentiary* hearing on only some of those claims. Stage II is not limited exclusively to the evidentiary development of some claims but is instead the final stage of the case dur-

issues were referred to United States Magistrate Judge Susan Russ Walker for recommendation, *see id.*, which was filed on June 2, 1999 (Doc. no. 40). Both petitioner and respondent have filed objections to portions of the recommendation. *See* Petitioner's Objections to the Recommendation of the Magistrate Judge, filed June 15, 1999 (Doc. no. 42); Respondent's Objection to the Recommendation of the Magistrate Judge, filed June 28, 1999 (Doc. no. 43).

## II. DISCUSSION

The court begins by noting that a number of the 42 claims in McNair's petition are not subject to dispute at this stage. Of the 42 claims, only 12—claims D(10), E(3)—(6), E(9)—(10), E(12), E(14), N, O, and Q—were identified by the respondent as procedurally defaulted.[2] Of those 12 claims, the Magistrate Judge recommended that only claims N and Q were procedurally defaulted and that the rest were not procedurally defaulted. Because neither party has objected to the Magistrate Judge's recommendation on the claims found not to have been procedurally defaulted, that part of the recommendation will be adopted. Finally, the petitioner requests an evidentiary hearing on only five claims—E(3), E(4), E(6), A, and Q—all of which are discussed below because objections have been filed to the Magistrate Judge's recommendations on these claims.

## A. PROCEDURAL DEFAULT

■■■ The court must determine whether two of the petitioner's claims—claim N, which contends that blacks and women were underrepresented in the venire pool from which his grand and petit juries were selected, and claim Q, which alleges that Alabama's method of execution by electrocution constitutes cruel and un-

usual punishment—were procedurally defaulted. When a state court refuses to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement, the prisoner is said to have "procedurally defaulted" those claims, and the doctrine of "procedural default" thus bars the prisoner from raising those claims in the federal habeas petition. *See Coleman v. Thompson*, 501 U.S. 722, 729–32, 744–51, 111 S.Ct. 2546, 2553–55, 2561–66, 115 L.Ed.2d 640 (1991). A prisoner's procedural default can be excused, however, if the prisoner can show both cause for the default and actual prejudice resulting from the violation of federal law. *See id.* at 750, 111 S.Ct. at 2565. "Cause" must be more than simple neglect or ignorance; absent assistance of counsel so ineffective as to constitute a constitutional deprivation, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). "Prejudice," in turn, is a showing that the alleged federal violation actually and substantially denied the prisoner fundamental fairness at trial. *See id.* at 494, 106 S.Ct. at 2648.

### 1. Claim N

The petitioner objects to the Magistrate Judge's recommendation that claim N, the claim of discriminatory composition of venire pools, was procedurally defaulted. Claim N was never presented to the state courts, neither at trial, on direct appeal, nor in state collateral review. The claim was thus not exhausted at the state level. *See* 28 U.S.C.A. § 2254(b)(1)(A) (mandating exhaustion of state remedies as prerequisite to federal habeas review). The failure to exhaust collapses into procedural

---

ing which the court will rule on the merits of all claims before it.

**2.** For ease of reference, claims are discussed by their outline heading position in the origi-

nal petition for writ of habeas corpus. These claims are listed in full in the appendix to the recommendation of the Magistrate Judge.

default doctrine because the two-year limitations period for state post-conviction review of this claim has now lapsed, *see* Ala. R.Crim. P. 32.2(c), and it is therefore obvious that the unexhausted claim would be procedurally barred if this court dismissed the claim for purposes of exhaustion. *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir.1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as [procedurally defaulted].").

■ In arguing that this procedural default should be excused, the petitioner cites the State of Alabama's abysmal system for compensating counsel appointed for criminal defense of the indigent. As the petitioner explains, this system—which caps compensation for appointed trial counsel at 50 hours of out-of-court work, does not provide post-conviction counsel by right, and caps fees for any appointed post-conviction lawyer at $600—is grossly inadequate and creates disincentives for committed, zealous advocacy, especially in capital cases. The petitioner urges that Alabama's inadequate compensation for appointed counsel in capital cases constitutes cause because it is "external" to the defense and constitutes prejudice because "prejudice is found in the fact that the specter of race bias in this case is particularly troubling." [3]

The Magistrate Judge rejected these arguments as incomplete. In the Magistrate Judge's analysis, the petitioner fails to bridge the thesis of systemic inadequacy with the conclusion that this inadequacy directly caused this petitioner's counsel to fail to raise this claim. The petitioner fails, for instance, to show what his lawyer's actual hours of work were, how the hours were compensated, or how that compensation was inadequate in this case. Further, the petitioner fails to explain how this purported inadequacy of compensation, rather than neglect, ignorance, or strategic decision, "actually prevented [counsel] from conceiving, raising, or substantiating this reasonably available claim" of discriminatory composition of venire pools.[4]

The Magistrate Judge's reasoning is sound. When the petitioner submitted his objections to the Magistrate Judge's recommendation, he wholly ignored this logical failure that the Magistrate Judge had exposed; instead, the petitioner merely restates to this court the same flawed arguments. Baffled by this lapse, this court scrutinized the arguments further and found an alternative interpretation to make sense of the arguments: that this claim and the argument for cause and prejudice re-allege and incorporate other claims from the petition. Claim N is a substantive reiteration of claim E(7): the latter alleges ineffective assistance of counsel based on the failure of the petitioner's trial counsel to challenge the underrepresentation of blacks and women in the venire pool from which the grand and petit juries were selected, and the former complains of the underrepresentation itself as its own basis for habeas relief. The argument for cause and prejudice likewise reiterates the theory of claim E(1), which alleges that Alabama's inadequate system of compensation for criminal representation of the indigent resulted in ineffective assistance of counsel in violation of the petitioner's sixth-amendment rights. Both repeated claims are claims of ineffective assistance of counsel, which is not only a basis for habeas relief but also a basis for finding cause and prejudice to excuse procedural default of other claims. *See Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. This alternative interpretation would have

---

3. *See* Petitioner's Objections to the Recommendation of the Magistrate Judge, filed June 15, 1999 (Doc. no. 42), at 1–4.

4. *See* Recommendation of the Magistrate Judge, filed June 2, 1999 (Doc. no. 40), at 20–21.

recast the arguments for cause and prejudice: by repeating these claims of ineffective assistance of counsel, then, the petitioner would have effectively argued that the instances of ineffective assistance of counsel alleged as claims E(1) and E(7) are simultaneously bases for habeas relief and for cause and prejudice excusing the procedural default of claim N.

At a conference held February 16, 2000, this court sought to determine if this alternative interpretation should govern. The petitioner conceded that this interpretation would have made a plausible case for showing cause and prejudice. The petitioner urged nonetheless that the Magistrate Judge's reading was the intended one: the petitioner was in fact arguing that the inadequate compensation system directly caused the procedural default. The petitioner explained that he sought such a ruling as a matter of law, likening the inadequate compensation to giving the keys of the family car to an eleven-year-old who is subsequently involved in a car wreck.

What the petitioner still failed to explain was the logical gap identified by the Magistrate Judge. To take his illustration as an example, an eleven-year-old behind the wheel of a car may be involved in a car wreck without having *caused* the car wreck: the child driver could have been driving at a reasonable speed and obeying all traffic laws until he was struck from behind. The petitioner has certainly identified Alabama's shameful system for compensating criminal defense counsel for the indigent as a problem sorely in need of redress, but he has failed to show this inadequacy's role in *causing* this petitioner's counsel in this case to default this claim. This objection must therefore be overruled.

### 2. Claim Q

 Claim Q seeks relief from the death penalty as administered by electrocution in the petitioner State of Alabama. This claim alleges that Alabama's electric chair is an instrument of constitutionally prohib-ited cruel and unusual punishment because it inflicts inhuman pain and barbarously burns the prisoner's flesh, and because societal standards of decency and acceptable punishment have evolved beyond it. Like claim N, claim Q was never raised in the state courts and thus, like claim N, is an unexhausted claim that is treated as procedurally defaulted.

To excuse the default for cause, the petitioner asserts that new facts have emerged which were unavailable while the case was in the state courts: that two States, Kentucky and Tennessee, have recently legislated to phase out the electric chair, leaving Alabama one of only four states to use electrocution, and that a post-mortem examination following the 1996 electrocution of Edward Horsley has recently shown that Alabama's electric chair is malfunctioning. "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel" does constitute cause for excusing procedural default. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645 (citing *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984)). The Magistrate Judge disagreed, however, that this exception applies to the petitioner's claim. According to the Magistrate Judge, these new developments may have occurred after the petitioner's Rule 32 claim, but they amount to nothing more than evidence that might support or strengthen the claim—the claim itself, the abstract claim that the electric chair violates the eighth amendment, was available with or without these new developments. Further, the Magistrate Judge reasoned, while the Horsley postmortem was not conducted until after the petitioner's Rule 32 application, there were other postmortem examinations—included, in fact, in the petitioner's exhibits to the Magistrate Judge—that were available to the petitioner long before the federal habeas petition in support of this claim that the chair malfunctions.

The Magistrate Judge is correct in her analysis of the Horsley postmortem exami-

nation. The Horsley evidence was new, but ample other evidence of the electric chair's malfunctioning did exist during the proceedings in the state courts, and that evidence made this claim of the electric chair's malfunctioning reasonably available to the petitioner then. The Magistrate Judge understates, however, the value of the evidence that Kentucky and Tennessee have legislated away the electric chair. This evidence does not simply support an eighth-amendment claim that electrocution offends evolving social standards of decency; instead, it is the very basis for the claim itself.

The Magistrate Judge's analysis fails to recognize that any challenge to the constitutionality of the electric chair must appeal to some significant change in public opinion. The substantive content of the eighth amendment's command is "progressive" and is thus "not fastened to the obsolete, but may acquire meaning as public opinion becomes enlightened by a humane justice." *Weems v. United States,* 217 U.S. 349, 378, 30 S.Ct. 544, 553, 54 L.Ed. 793 (1910). "[T]he Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society, and so admits of few absolute limitations." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion))) (internal quotations and punctuation omitted). One index of changes in public opinion that the Supreme Court has used again and again is legislative consensus rejecting a form of punishment. *See, e.g., Penry v. Lynaugh,* 492 U.S. 302, 331, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989) (referring to legislative enactments as the "clearest and most reliable objective evidence" of evolving standards); *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (invalidating capital punishment for offenders under age 16 and citing rejection of the practice by 19 of 37 legislatures); *Enmund v. Florida,* 458 U.S. 782, 788–96, 102 S.Ct. 3368, 3372–76, 73 L.Ed.2d 1140 (rejecting death penalty for some felony murder where a "small minority" of "only" 8 out of 36 jurisdictions permitted it).

Still, the electric chair has been the subject of much litigation over its long history and has repeatedly survived those challenges. In the Eleventh Circuit, as recently as three years ago, challenges to the electric chair have been summarily rejected. *See Felker v. Turpin,* 101 F.3d 95, 97 (11th Cir.1996) ("In light of overwhelming precedent, we conclude there is *no merit* in Plaintiffs' claim that death by electrocution constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.") (emphasis added); *see also Johnson v. Kemp,* 759 F.2d 1503, 1510 (11th Cir.1985) ("The contention that death by electrocution violates the Eighth Amendment is *frivolous.*") (emphasis added); *Sullivan v. Dugger,* 721 F.2d 719 (11th Cir.1983) (denying without discussion eighth-amendment challenge to electrocution). Absent some substantial change in public opinion, then, the petitioner simply would not have had a meritorious claim had he challenged the constitutionality of electrocution before the state courts.

Accordingly, the recent legislative changes in Kentucky and Tennessee are not merely evidence relevant to an eighth-amendment challenge that abstractly existed prior to these changes. Instead, they are the necessary preconditions for the very claim itself. That Kentucky and Tennessee have recently enacted legislation phasing out the electric chair—thus leaving Alabama as one of only four States to permit electrocution—may or may not constitute such a substantial change as to warrant overruling the "overwhelming precedent" cited in *Felker.* It does, at any rate, serve as the basis for a claim that is only now actually a colorable claim. Because these new facts are the basis for a

claim that was not reasonably available during the petitioner's state proceedings, this court finds cause to excuse the procedural default.

This court also finds prejudice. A successful eighth-amendment challenge would mean that the petitioner was denied fundamental fairness at sentencing by being deprived of the right to a sentence that is neither cruel nor unusual. Finding both cause and prejudice, this court finds that the procedural default on claim Q is excused.

## B. EVIDENTIARY HEARINGS

The petitioner requests that this court permit evidentiary hearings to develop the factual basis of five claims: claims E(3), E(4), and E(6), alleging ineffective assistance of counsel; claim A, alleging that Henry County discriminated against blacks in selecting the foreperson of the grand jury that indicted the petitioner; and claim Q, challenging the constitutionality of the electric chair. The Magistrate Judge recommended that an evidentiary hearing should be granted for claims E(3), E(4), and E(6), that the request for an evidentiary hearing should be denied for claim A, and that claim Q was ineligible for an evidentiary hearing because she had earlier concluded that it was procedurally defaulted. The petitioner objects to the denial of an evidentiary hearing for claims A and Q, and the respondent objects to the grant of a hearing for claims E(3), E(4), and E(6).

The standard for reviewing these objections has become more stringent with the enactment of the Anti–Terrorism and Ef-fective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214. AEDPA severely restricts the capacity of a federal habeas court to conduct a hearing to develop the evidence relating to a claim. As it modifies § 2254, AEDPA mandates that, where a habeas petitioner has failed to develop the factual basis in state proceedings, the habeas court is not permitted to hold an evidentiary hearing unless two showings are made: first, that the claim relies either on facts that were previously unavailable even with appropriate diligence or on a constitutional rule that was previously unavailable to the petitioner but retroactively applies to this case; and, second, that the proffered evidence would, if true, clearly convince the court that no reasonable trier of fact would have found the petitioner guilty if not for the constitutional error. *See* 28 U.S.C.A. § 2254(e)(2).[5]

If, however, the petitioner cannot be said to have "failed" to develop the factual basis for the claim, this restriction does not apply. The word "failed" suggests that there must be some fault attributable to the petitioner for the lack of evidentiary development in the state courts: "To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is, as a consequence, at fault and bears responsibility for the failure. In this sense, a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Williams v. Taylor,* —— U.S. ——, ——, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000). Thus, "[u]nder the opening clause of § 2254(e), a failure to develop the factual basis of a

---

5. The AEDPA provision is, in full, as follows: "(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."
28 U.S.C.A. § 2254(e).

claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or to the prisoner's counsel." *Id.*

██ Supreme Court precedent developed before AEDPA establishes further limits on the court's discretion on evidentiary hearings; while AEDPA limits the court's ability to hold an evidentiary hearing, this precedent limits the court's discretion to deny a hearing. If a petitioner is not barred by AEDPA from developing evidence in the federal habeas court, then any one of the following conditions entitles the petitioner to an evidentiary hearing: "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). Where an evidentiary hearing is neither prohibited nor mandated, the court retains discretion to decide whether to convene an evidentiary hearing. *See id.* at 318, 83 S.Ct. at 760.

### 1. Claims E(3), E(4), and E(6)

██ Claims E(3), E(4), and E(6) are claims of ineffective assistance of counsel—alleging, respectively, failure to obtain and present independent expert witnesses at the guilt phase, failure to develop an adequate theory of mitigation at the penalty phase, and failure to obtain and present independent expert witnesses at the penalty phase. In substance, these claims all complain of trial counsel's failure to obtain experts to address the petitioner's crack cocaine habit as a theory to undermine the specific intent element of the underlying crime and as mitigating evidence to avoid a sentence of execution. The petitioner argues that the failure to develop the evidence for these claims before the state courts should not be attributed to him because a series of state court orders—denying him funds to appoint an expert, denying his expert access to the prison to interview the petitioner in person, and overruling his objections to these denials—prevented him from developing the evidence.

The Magistrate Judge agreed, citing as persuasive authority *Cardwell v. Greene,* 152 F.3d 331 (4th Cir.1998). In *Cardwell,* the petitioner had filed several motions related to obtaining and presenting expert witness testimony, and the state courts repeatedly denied the motions. The *Cardwell* court ruled that the petitioner's failure to present other non-expert evidence for that claim was excusable, as the petitioner had rationally interpreted the state courts' repeated denials of the requests for experts as indications that the state courts would be completely unmoved by any evidence of that claim. Following the lead of *Cardwell,* the Magistrate Judge held that she could not conclude that the petitioner had failed to develop the factual basis of this claim in the state proceedings, because the state court had foreclosed the petitioner's attempts to develop the requisite expert testimony.

The Magistrate Judge's reliance on *Cardwell* proved to be prescient. After the Magistrate Judge issued the recommendation, the Supreme Court endorsed the interpretation of failure for § 2254(e)(2) that informed *Cardwell. See Williams,* —— U.S. at ——, 120 S.Ct. at 1487–1488. The respondent's objections ask this court to interpret the diligence required of habeas petitioners as requiring further attempts to develop the factual basis of claims in state courts even where the state courts themselves have indicated that such efforts are futile. This court cannot agree. The court will therefore

grant the petitioner's request for an evidentiary hearing for these claims.

## 2. Claim A

■ Claim A alleges that Henry County discriminated against black persons in the selection of grand jury foreperson; this pattern of discrimination has allegedly existed for at least 20 years, beyond which there is no historical record of the race of grand jury forepersons, and culminated in racially discriminatory selection of the foreperson of the grand jury that indicted the petitioner. The petitioner urges that the failure to develop the evidentiary basis of the claim should be attributed to the State rather than to the petitioner because the state courts declined to consider the evidence presented to them and to permit further factual development.

The Magistrate Judge disagreed. Carefully tracking the procedural history of this claim, she noted that the petitioner made only one attempt in the original state trial to determine the racial composition of the grand jurors—by subpoenaing the grand jurors—and did not diligently pursue the easier available alternative of deposing the clerk of the court. The petitioner did finally pursue that alternative, but not until his case was before the Alabama Supreme Court. Not until that stage did the petitioner even raise the claim of discriminatory selection of grand jury foreperson, which is a conceptually distinct claim from the claim he did pursue of discriminatory composition of the grand jury as a whole. The Alabama Supreme Court declined to review the affidavit of the clerk of court offered in support of the foreperson claim because the posture of the case was appeal rather than retrial:

> "The State contends that the record shows no plain error with respect to the method of selecting grand jurors in Henry County. The clerk's affidavit, the State argues, is outside the record and should not be considered as evidence in this case. We agree.
>
> "The record in this case is silent [on the facts relating to this claim]. Under the plain error rule, this Court will 'notice any *plain error or defect* in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner.' (Emphasis added.) Rule 39(k), Ala. R.App. P. As this Court stated in *Ex parte Watkins,* 509 So.2d 1074, 1077 (Ala.1987), *cert. denied, Watkins v. Alabama,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), '[t]he defendant cannot successfully argue that error is plain in the record when there is no indication in the record that the act upon which error is predicated ever occurred.' In effect, McNair is requesting that we remand this case for a hearing on this issue, on the strength of the circuit clerk's affidavit, so that a record can be created for appellate review. We specifically decline this request, for to do otherwise would unduly enlarge the scope of the plain error review as authorized by our appellate rules."

*McNair,* 653 So.2d at 360. Reasoning that the petitioner was to blame for not diligently attempting to develop the evidence at the trial court level until it was too late, the Magistrate Judge concluded that the petitioner failed to develop the evidentiary basis for the claim and is thus barred by § 2254(e)(2) from developing that evidence in an evidentiary hearing before this court.

This court agrees with the Magistrate Judge's analysis. The petitioner's objection to the Magistrate Judge's recommendation, which only reiterates the same failed arguments presented to the Magistrate Judge, must be overruled.

However, the question has arisen of whether, even if an evidentiary hearing is not an option under subdivision (e)(2) of § 2254, the court still has authority to afford relief under Rule 7 of the Rules

Governing Section 2254 Cases.[6] The answer is both yes and no: yes in the sense that Rule 7 remains an option, and no in the sense that Rule 7 does not allow the court to afford the same relief as is available under subdivision (e)(2).

What little case law exists on the issue arrives at no consensus on the questions whether and, if so, to what extent habeas courts can expand the record even if a petitioner is prevented by § 2254(e)(2) from conducting an evidentiary hearing. Two courts have assumed, without discussion, that habeas courts can expand the record under Rule 7 for claims that are not defaulted or otherwise barred from review yet do not survive the requirements for evidentiary hearings. *See Palacios v. Thompson,* No. 99–35145, 1999 WL 1040088 (9th Cir. Nov.16, 1999) (unpublished memorandum opinion), at *1 n. 3 ("We assume, for purposes of this appeal, that Rules 6 and 7 allow a petitioner to expand the record without meeting the requirements for holding an evidentiary hearing."); *United States ex rel. Assenato v. Nelson,* No. 97–C–2843, 1998 WL 704327 (N.D.Ill. Sept. 28, 1998), at *14 (expanding the record *sua sponte* after ruling that petitioner had failed to meet prerequisites for evidentiary hearing).

The only case to discuss at any length the availability of Rule 7 record expansion to such cases reaches the contrary conclusion. The court in *Charles v. Baldwin,* No. CV–97–380–ST, 1999 WL 694716 (D.Or. Aug.2, 1999) (Stewart, M.J.), reasoned that, because the habeas rules "are

intended to supplement, not supplant § 2254," and because § 2254 has been amended by AEDPA, the habeas court must accordingly interpret the rules "in light of the AEDPA." *Id.* at *1. Thus, even though AEDPA does not amend Rule 7 at all, the *Charles* court gleaned from "the changes wrought by the AEDPA in the requirements for an evidentiary hearing," *id.,* a policy that necessitates a restrictive interpretation of Rule 7. The *Charles* court concluded that the policy goal of "AEDPA limits the scope of federal habeas corpus review to the state court record," *id.,* and, therefore, "to expand the record to present new facts under Rule 7, petitioner must first meet the stringent requirements of 28 USC § 2254(e)(2)." *Id.* at *3. Rule 7, according to the *Charles* court, cannot be used if § 2254 bars an evidentiary hearing.

The *Charles* court's approach to Rule 7 is not persuasive, primarily because that court improperly equates the purposes and reach of Rule 7 with those of subdivision (e)(2). The crux of the *Charles* court's reasoning is a rhetorical sleight-of-hand: the only way to bridge the gap between AEDPA's modification of requirements for an evidentiary hearing and the conclusion that AEDPA restricts federal habeas review to the state court record is to read the reference to *evidentiary hearings* as a metonym for all *evidence.* Only by equating evidentiary hearings with all means of collecting evidence can the *Charles* court discern a need to redraft Rule 7 in order

---

**6.** Rule 7 of the Rules Governing Section 2254 Cases authorizes the federal habeas court to expand the record as follows:

"(a) Direction for expansion. If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition.

"(b) Materials to be added. The expanded record may include, without limitation, letters predating the filing of the petition in the district court, documents, exhibits, and answers under oath, if so directed, to writ-

ten interrogatories propounded by the judge. Affidavits may be submitted and considered as a part of the record.

"(c) Submission to opposing party. In any case in which an expanded record is directed, copies of the letters, documents, exhibits, and affidavits proposed to be included shall be submitted to the party against whom they are to be offered, and he shall be afforded an opportunity to admit or deny their correctness.

"(d) Authentication. The court may require the authentication of any material under subdivision (b) or (c)."

to prevent the rule from "supplant[ing]" the amended § 2254(e)(2).

The traditional canons of construction counsel against adopting the *Charles* approach. Congress is, in fact, presumed to expect that its legislative enactments will be read in accordance with Supreme Court precedent, *see United States v. Wells*, 519 U.S. 482, 495, 117 S.Ct. 921, 929, 137 L.Ed.2d 107 (1997), including the tenets of statutory interpretation. The first tenet, perhaps the most fundamental, is to start with the words of the statutes themselves. *See United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986). The words are "uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them." *Caminetti v. United States*, 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). "Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Id.* at 485, 37 S.Ct. at 192. Absent the rare circumstance of a clear legislative intent to the contrary, *see James*, 478 U.S. at 606, 106 S.Ct. at 3121, the ordinary sense of the words governs; if they are plain and unambiguous, then "it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning," 242 U.S. at 490, 37 S.Ct. at 196, and the interpretive inquiry must accordingly end.

The provisions at issue are not ambiguous. If an applicant has failed to develop the factual record for a claim in state proceedings and does not meet certain specified exceptions, then the statute mandates that "the court shall not hold an evidentiary hearing on the claim." 28 U.S.C.A. § 2254(e)(2). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). In its ordinary and usual sense, the word "hearing" refers to formal proceedings in court, and an "evidentiary hearing" is "[a] hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented." Black's Law Dictionary 725 (7th ed.1999). There is nothing in § 2254 nor in any other AEDPA provision to suggest that the words "evidentiary hearing" should be read outside the scope of their ordinary usage. In this case, an evidentiary hearing is an evidentiary hearing is an evidentiary hearing.

It is not, notably, the same as court-mandated expansion of the federal court record. Congress, a body made up typically of lawyers, is presumed to know the law of the area in which it legislated. *See Albernaz v. United States*, 450 U.S. 333, 341–42, 101 S.Ct. 1137, 1143–44, 67 L.Ed.2d 275 (1981). The drafters of AEDPA certainly knew the import of procedural rules and acted accordingly by re-drafting Rule 22 of the Federal Rules of Appellate Procedure ("Habeas Corpus and Section 2255 Proceedings"). *See* AEDPA § 103.[7] Still, Rule 7 was left intact. If

---

7. Section 103 of AEDPA provides:

"Rule 22 of the Federal Rules of Appellate Procedure is amended to read as follows: 'Rule 22. Habeas corpus and section 2255 proceedings

'(a) APPLICATION FOR THE ORIGINAL WRIT.—An application for a writ of habeas corpus shall be made to the appropriate district court. If application is made to a circuit judge, the application shall be transferred to the appropriate district court. If an application is made to or transferred to the district court and denied, renewal of the application before a circuit judge shall not be permitted. The applicant may, pursuant to section 2253 of title 28, United States Code, appeal to the appropriate court of appeals from the order of the district court denying the writ.

'(b) CERTIFICATE OF APPEALABILITY.— In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed

Congress intended to restrict federal habeas review entirely to the state court record unless the requirements of § 2254(e)(2) are met, or if Congress intended to eliminate Rule 7 record expansion in these cases, it could have done so explicitly. Instead, Congress restricted only *evidentiary hearings*, and this court must "assume that in drafting this legislation, Congress said what it meant." *United States v. LaBonte*, 520 U.S. 751, 757, 117 S.Ct. 1673, 1677, 137 L.Ed.2d 1001 (1997). The *Charles* court, then, is simply incorrect in holding that "AEDPA limits the scope of federal habeas corpus review to the state court record"; instead, AEDPA closes down evidentiary hearings, and such hearings only. AEDPA does not modify Rule 7.

The *Charles* court's creative interpretation is simply a gratuitous exercise in judicial hermeneutics, because it purports to reconcile two provisions that are not necessarily in any conflict. The "cardinal rule" is that repeals by implication, *Posadas v. National City Bank of New York*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936), and amendments by implication, *see United States v. Welden*, 377 U.S. 95, 103 n. 12, 84 S.Ct. 1082, 1088 n. 12, 12 L.Ed.2d 152 (1964), are disfavored. Instead, "[w]here there are two acts upon the same subject, effect should be given to both if possible." *Posadas*, 296 U.S. at 503, 56 S.Ct. at 352. There are two exceptions: "(1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." *Id.* Nonetheless, neither exception applies unless the intent to repeal is "clear and manifest." *Id.*

The first exception does not apply because there is no irreconcilable conflict between § 2254(e)(2) and Rule 7. By its terms, subdivision (e)(2) limits only evidentiary hearings (the formal proceedings during which the parties seek in an adversarial format to present dueling bodies of evidence) and further limits only evidentiary hearings to develop the factual basis of a claim (that is, the parties' opportunity to seek to have the court make credibility choices typically based on live, in-court, testimony). And it is Rule 8(a) of the Rules Governing Section 2254 Cases ("Evidentiary Hearing"), not Rule 7, that provides for evidentiary hearings in federal habeas proceedings.[8] Thus, § 2254(e)(2) expressly restricts the reach of Rule 8.

unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code. If an appeal is taken by the applicant, district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue. The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court. If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a State or its representative, a certificate of appealability is not required.' "

8. Rule 8 provides in part:

"Evidentiary Hearing
(a) Determination by court. If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require."

And the 1976 Advisory Committee Notes to the rule explain:

"Subdivision (a) contemplates that all of these materials, if available, will be taken into account. This is especially important

By its terms, Rule 7 empowers the court on its own initiative to order the production of documentary evidence independent of adversarial hearings and at any stage of the habeas review. As the Committee Notes explain: "It may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." *See* 28 U.S.C.A. § 2254 Rule 7 advisory committee notes. The Notes, however, caution: "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful." *Id.* Thus, Rule 7 facilitates, among other things, the early summary resolution of habeas cases on an expanded record, generally when the relevant issues are not ones of credibility.

Read together, the two provisions establish a coherent scheme: applicants who fail to develop the factual bases of their federal constitutional claims in the state courts are taxed a stiff penalty—they are denied the right to demand an evidentiary hearing in which they fashion a persuasive case with materials of their own choosing and in which the federal court would typically then make credibility choices—but they are not denied meaningful review altogether, because the federal habeas court can nonetheless order the production of materials that the court needs in order to conduct an initial or summary review.

This result is neither "a positive repugnancy," *United States v. Borden Co.,* 308 U.S. 188, 189, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939), nor "absurd or wholly impracticable consequences," *Caminetti,* 242 U.S. at 490, 37 S.Ct. at 196. Rule 7, in its

traditional role, would not effectively render subdivision (e)(2) a nullity, nor is it true vice versa; the habeas court may expand the record motivated only by its "responsible concern that it provide the meaningful federal review of constitutional claims that the writ of habeas corpus has contemplated throughout its history" and should review additional materials that are "no broader than necessary to meet the needs of the court." *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 621, 88 L.Ed.2d 598 (1986). Further, whether or not the court uses Rule 7, a petitioner who is foreclosed by § 2254(e)(2) still loses the valuable advocacy opportunity to select the full range of materials he deems relevant, to defend them against the state's cross-examination, to cross-examine the state's counter-evidence, and, perhaps most importantly, to have the federal habeas court then make new and independent credibility findings based on live, in-court, testimony.

However, as is obvious, Rule 7 and § 2254(e)(2) are not unrelated. To be sure, the rule is available to the court to help determine if an evidentiary hearing is precluded by § 2254(e)(2). Thus, if it is clear that an evidentiary hearing is prohibited by subdivision (e)(2), it would generally make little sense to resort to Rule 7 to determine if an evidentiary hearing is necessary. However, if this it unclear, the court could logically resort to Rule 7 to obtain evidence on whether the requirements of subdivision (e)(2) have been met. In addition, the rule serves as a tool to help the court determine if an evidentiary hearing is necessary at all, *see Vincent v. Louisiana,* 469 U.S. 1166, 1169–70, 105 S.Ct. 928, 930–31, 83 L.Ed.2d 939 (1985) (Brennan, J., dissenting), and to supplement the record after an evidentiary hear-

---

in view of the standard set down in *Townsend [v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963),] for determining when a hearing in the federal habeas proceeding is mandatory.

The appropriate standard * * * is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evi-

dentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. 372 U.S. at 312 [83 S.Ct. 745]."

28 U.S.C.A. § 2254 Rule 8 advisory committee notes.

ing, *see* 28 U.S.C.A. § 2254 Rule 7 advisory committee notes ("An expanded record may also be helpful when an evidentiary hearing is ordered."), and the rule is available to help in determining if an evidentiary hearing is precluded by § 2254(e)(2). But, aside from these purposes, Rule 7 is simply a tool for the court to rule on the merits of a claim for which an evidentiary hearing is precluded or not ordered. *See* 28 U.S.C.A. § 2254 Rule 7 advisory committee notes ("The purpose is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."). The two provisions are thus not at cross-purposes but serve different, albeit related, purposes.

The second exception to the presumption against implied repeal likewise does not apply in this case. AEDPA does not replace the pre-AEDPA § 2254 with an entirely new statute, nor does it create a new set of procedural rules so elaborate that they must by necessity supplant the existing rules. However dramatically AEDPA changes federal habeas review, it nonetheless makes selective and specific changes. Rule 7 has not been supplanted but was instead left intact to function as it always has alongside the revised § 2254.

Arguably, the *Charles* court simply attempted to give effect to the policy goals of AEDPA, so that the leap from the restriction on evidentiary hearings to a restriction on the entire corpus of facts which the habeas court can consider is not a misreading but a thoughtful identification of legislative intent. Just the same, the Supreme Court has repeatedly cautioned since at least as early as 1829 that, where statutes are written in plain language, judicial interpretation cannot substitute the supposed policy goals of the statute for its words. *See Gardner v. Collins*, 27 U.S. (2 Pet.) 58, 91, 7 L.Ed. 347 (1829) ("What the legislative intention was, can be derived only from the words they have used; and we cannot speculate beyond the reasonable import of these words. The spirit of the act must be extracted from the words of the act, and not from conjectures aliunde."); *see also Caminetti*, 242 U.S. at 490, 37 S.Ct. at 196 ("[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent."); *Mackenzie v. Hare*, 239 U.S. 299, 308, 36 S.Ct. 106, 107, 60 L.Ed. 297 (1915) ("[A]ll the reasons that induced [a statute's] enactment and all of its purposes must be supposed to be satisfied and expressed by its words . . . ."); *Fox v. Seal*, 89 U.S. (22 Wall.) 424, 439, 22 L.Ed. 774 (1874) ("The supposed policy of the State cannot, in a judicial tribunal, prevail over a plain statute."). The *Charles* court identifies no ambiguity warranting the turn to policy and instead ignores the plain language of the revised subdivision (e)(2) and its express limitation to evidentiary hearings only. It states no basis for its conclusion that the policy or intent of subdivision (e)(2) is to restrict the scope of habeas review for these claims entirely to the state court record; the leap from evidentiary hearings to all evidence is authorized by no citation to the other sections of AEDPA, to the Congressional committee reports, to legislative debates, or to any other source from which a legislative intent can properly be discerned. *See Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 220–21, 100 S.Ct. 2601, 2625, 65 L.Ed.2d 696 (1980) ("Since our present task is one of statutory construction, questions of public policy cannot be determinative of the outcome unless specific policy choices fairly can be attributed to Congress itself."). Absent any compelling evidence to the contrary, the legislative intent of subdivision (e)(2) must be inferred from its words—that refer only to evidentiary hearings, and not to the court's tool of Rule 7—and from the standard presumptions that Congress was aware of Rule 7, understood that the courts can use Rule 7 to expand the record whether or not an evidentiary hearing is ordered, and knew that AEDPA would be read according in accordance with these presumptions.

In sum, here, the petitioner failed to develop the factual basis of claim A in the state courts and does not assert the exceptions for the resulting bar to conducting an evidentiary hearing. Still, because this claim has not been summarily dismissed, the petitioner can call upon the court to exercise its authority under Rule 7 to expand the record. However, because, as indicated previously, the reach and purposes of Rule 7 are not the same as those of subdivision (e)(2) of § 2254, the court will be constrained by Rule 7's traditional limits. The petitioner cannot use Rule 7 to secure the benefits that only subdivision (e)(2) can bestow. If the petitioner should conclude that the presentation of claim A warrants more than what Rule 7 allows— that is, warrants an evidentiary hearing— subdivision (e)(2) would preclude the court from providing such. Unless and until the petitioner seeks specific relief under Rule 7, the court cannot tell whether Rule 7 allows the relief described, and, if so, whether the court should exercise its discretion to give it.

The court will therefore deny relief under § 2254(e)(2), and the court will not reach the issue of the actual availability of Rule 7 unless and until the petitioner seeks relief under the rule.

### 3. Claim Q

Because the Magistrate Judge found that the petitioner defaulted on claim Q, she did not address whether the petitioner was entitled to a hearing on this claim. The petitioner has proven that there was cause and prejudice to excuse his procedural default of this claim. Having established cause for the default, he has also shown cause for the lack of evidentiary development. This court will thus exercise its discretion to conduct an evidentiary hearing on this claim.

### III. CONCLUSION

In accordance with the above-stated reasons, the following is the ORDER, JUDGMENT, and DECREE of the court:

(1) The objections filed by respondent Michael Haley on June 28, 1999 (Doc. no. 43), are overruled;

(2) The objections filed by petitioner Willie McNair on June 15, 1999 (Doc. no. 42), are sustained in part and overruled in part;

(3) The recommendation of United States Magistrate Judge Susan Russ Walker entered on June 2, 1999 (Doc. no. 40), is rejected in part and adopted in part;

(4) The motion for evidentiary hearing filed by petitioner McNair on April 1, 1999 (Doc. no. 34), is denied in part and granted in part;

(5) Of petitioner McNair's 42 claims, only claim N is procedurally defaulted; and

(6) Petitioner McNair is not entitled to an evidentiary hearing on claim A and is entitled to an evidentiary hearing on claims E(3), E(4), E(6), and Q.

### SUPPLEMENTAL OPINION

The respondent having brought to the court's attention that, in its order of May 11, 2000, it failed to discuss in sufficient detail why AEDPA does not preclude a hearing on claim Q, the court now adds the following:

Because the Magistrate Judge found that the petitioner defaulted on claim Q, she did not address whether the petitioner was entitled to a hearing on this claim. As stated, AEDPA mandates that, where a habeas petitioner has failed to develop the factual basis in state proceedings, the habeas court is not permitted to hold evidentiary hearing unless the claim relies either on facts that were previously unavailable even with appropriate diligence or on a constitutional rule that was previously unavailable to the petitioner but retroactively applies to this case and the proffered evidence would, if true, clearly convince the court that no reasonable trier of fact would have found the petitioner guilty if not for the constitutional error.

Claim Q, which succinctly charges that "[t]he manner of execution used by the State of Alabama constitutes cruel and unusual punishment," has evolved over the course of these proceedings into two distinct claims: that Alabama's electric chair violates the eighth amendment because the chair itself malfunctions, painfully burning the prisoner's flesh, and that the electric chair violates the eight amendment because society's evolving standards of decency categorically no longer tolerate this method of execution. As this court has discussed above, the petitioner has defaulted the claim that relies on alleged malfunctions of the electric chair, but the decency-standard claim has not been defaulted because it was not available at the time of state post-conviction review. Because the petitioner is barred from pursuing the claim that rests on allegations of the chair's malfunction, the petitioner of course cannot use these habeas proceedings to develop evidence of the chair's possible malfunctioning.

■ The petitioner has, however, proven that there was cause and prejudice to excuse his procedural default of the decency-standard claim because this claim was not available during state proceedings, and the petitioner thus cannot be charged with 'failure' to develop the evidentiary basis for it. AEDPA, therefore, does not prohibit a hearing on this claim. Accordingly, this court will permit the petitioner to conduct an evidentiary hearing on claim Q, but only to the extent that the hearing will develop evidence that pertains to the alleged changes in public opinions and evolving standards of decency—that is, only the evidence, such as recent legislative developments, that the petitioner did not fail to develop in the state courts.